UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                          CASE NO. 4:16CV00168 BSM

$284,950.00 IN U.S. CURRENCY                               DEFENDANT

NIKKOLAS THOMPSON                                           CLAIMANT

### THE UNITED STATES OF AMERICA'S BRIEF IN SUPPORT OF ITS MOTION TO STRIKE NIKKOLAS THOMPSON'S VERIFIED CLAIM AND ANSWER TO THE COMPLAINT

Nikkolas Thompson claims an interest in Defendant $284,950.00 in U.S. Currency ("the Defendant Currency"); however, his ownership claim failed to meet the required pleading standard, and when the United States pressed him in discovery to support his deficient claim with facts, he also failed to adequately respond to those discovery requests.  In light of Thompson's failure to adequately plead an ownership interest in the Defendant Currency, and his failure to meet his discovery obligations, the United States submits that this Court should strike Thompson's ownership claim and his answer to the complaint as provided by Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

### BACKGROUND

Seizure of Property[1]

The Defendant Currency was seized from Nikkolas Thompson on September 29, 2015 at the Bill and Hillary Airport in Little Rock, Arkansas.  On September 29, 2015 around 9:10 a.m., Transportation Security Administration ("TSA") agents were examining Thompson's luggage when the screening equipment showed an anomaly with Thompson's suitcase.   A TSA officer

---

[1] The United States includes the facts regarding the seizure to provide context.  Its motion, however, is based on Thompson's procedural failings and his failure to provide full and complete answers in discovery.

opened the bag and discovered the Defendant Currency in a false bottom of the black suitcase. The money was wrapped in small bundles with colored rubber bands, and it was hidden beneath a small thin piece of plywood that had been cut to fit the shape of the suitcase and was painted black. The TSA officer alerted the Little Rock Police Department ("LRPD") and the Department of Homeland Security Investigations ("HSI") about the discovery of the money.  LRPD Detective Ryan Hudson and his service canine, Kazi, responded to the scene and inspected the suitcase.  Kazi gave a positive alert for the odor of narcotics on the suitcase.  Security officials were able to identify Thompson as the owner of the bag.

HSI Special Agents Jeffrey Jukes and Wayne Sanders responded to the scene and interviewed Thompson.  Special Agents Jukes and Sanders read Thompson his Miranda rights, and Thompson acknowledged his rights and agreed to speak to the agents.  Thompson told the agents that he and Alisha Aubrey, Thompson's girlfriend and business partner, jointly owned the Defendant Currency.  Thompson said that the Defendant Currency was proceeds of their business, Aubrey's paid employment with Keller Williams Realty, and Thompson's paid employment as a patient transport for Arkansas Children's Hospital.  Thompson said that Aubrey owns a fitness studio named Body by Resilience.  Thompson said he was traveling with the Defendant Currency because he was on a trip to scout prospective locations for a new studio in Ontario, California, and he wanted to have money to purchase real property if he found something that would work for the business.  Thompson initially said he was working with a real estate agent named John Smith, but when Special Agent Jukes told him that sounded like he fictitious name, Thompson admitted that he was not working with a John Smith and that he was only joking.  Thompson also admitted that he had not spoken with a realtor or an attorney regarding opening a new location in a new state, and he did not know what the process might involve.  Special Agent Jukes asked Thompson why

he was traveling with money instead of a cashier's or traveler's check, and Thompson responded that he and Aubrey keep their money in the suitcase because they don't want the Internal Revenue Service to know about it.  Thompson said that the proceeds from Body by Resilience never go through a bank because his and Aubrey's clients all pay in cash.  Special Agent Jukes asked for Aubrey's contact information to verify Thompson's claims, but Thompson insisted that she was too busy to talk to agents.  Special Agent Jukes said that he was going to call Aubrey to ask about the money.  After Special Agent Jukes said he was going to call Aubrey, Thompson became visibly agitated and asked whether he was free to leave.  Special Agent Jukes told Thompson that he was not under arrest, and Thompson then left the airport.  Special Agent Jukes and others working on the investigation attempted to contact Aubrey in the months following the seizure but prior to the filing of this action, and they were not successful in speaking with her.

Procedural History

Shortly after the seizure the Defendant Currency, the United States brought this action seeking the forfeiture of the Defendant Currency. Complaint, Dkt. 1, at 1.  Thompson filed a claim in this matter on May 4, 2016.  *See* Verified Claim, Dkt. 3, at 1.  On May 17, 2016, the United States advised Thompson that his claim was deficient in a number of ways.  McCree Letter to Sprinkle (May 17, 2016), Exh. 1, at 1-3; McCree Email to Sprinkle (May 24, 2016), Exh. 2, at 1. Thompson amended his claim to address some of the deficiencies, but he did not address them all. *See* Amended Verified Claim, Dkt. 6-1, at 1-3.[2]  In his amended claim, Thompson purports to claim the defendant property both for himself and for Body by Resilience.  *Id*.  Thompson's claim,

---

[2] Thompson's amended claim did not comport with General Order 53, so the Clerk told Thompson to revise the amended claim.  Notice of Deficiency, Dkt. 7, at 1. Further, the Clerk directed that both the original filing and the revised document would remain on the docket.  *Id*. The most up-to-date claim is included on the docket as docket entry 6-1.

however, does not make clear how much of the money belongs to Body by Resilience and how much Thompson believes he personally owns. *Id.*

After advising Thompson of the deficiencies in his claim, the United States moved for entry of a stay pending the outcome of a related criminal investigation.  USA Motion to Stay, Dkt. 8, at 1.  Thompson objected to the stay.  Thompson Response to Motion to Stay, Dkt. 10, at 1-6. Ultimately, the Court granted the stay and directed that this case be stayed for 45 days.  Order Staying Case, Dkt. 11, at 1.  The stay in this case expired on September 19, 2016.

On May 17, 2016, in the same letter that outlined the deficiencies of Thompson's amended claim, the United States also advised that if this litigation were to continue, the United States intended to address the explore the facts underlying Thompson's standing to be a party to this action and as a courtesy, provided Thompson with a list of potential special interrogatories. McCree Letter to Sprinkle (May 17, 2016), Exh. 1, at 3-6.  The letter also advised Thompson that special interrogatories are governed by a different rule and have a shorter deadline than Rule 33 interrogatories. *Id*. at 3.

The day after the stay expired, the United States moved directly into discovery on the issue of Thompson's standing; on September 20, 2016, the United States served Thompson with special interrogatories as provided by Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  *See* McCree Letter to Sprinkle (Sept. 20, 2016), Exh. 3, at 1.  Thompson failed to respond to special interrogatories within the time provided by Rule G.  *See* McCree Letter to Sprinkle (Oct. 17, 2016), Exh. 4, at 1. The United States made repeated verbal and written requests for Thompson to provide his answers, and he finally complied on Oct. 24, 2016.  *See, e.g.,* McCree Email to Sprinkle (Oct. 19, 2016), Exh. 5, at 1; McCree Email to Sprinkle

(Oct. 23, 2016), Exh. 6, at 1; McCree Email to Sprinkle (Oct. 24, 2016), Exh. 7, at 1-2; Thompson

Answers to Special Interrogatories, Exh. 8, at 7-8.

After reviewing Thompson's answers to special interrogatories, the United States identified

numerous deficiencies in the answers and requested that Thompson supplement his answers by

October 28, 2016.  McCree Letter to Sprinkle (Oct. 25, 2016), Exh. 9, at 1.  Thompson did not

meet the deadline or respond to further inquiries regarding his answers.  *See* USA Motion to

Continue, Dkt. 12, at 2-3.  The United States made several attempts, mostly by phone, to determine

Thompson's intent to address the deficiencies in his answers to special interrogatories.  The United

States also advised in its November 4, 2016, motion to continue that if Thompson did not address

the deficiencies in the coming days that the United States intended to seek appropriate relief from

the Court.  *Id*. at 3.  Thompson has not provided any additional information despite these repeated

requests.  Given the deficiencies of Thompson's claim and his answers to special interrogatories

and his continuing failure to cure these deficiencies, the United States moved to strike Thompson's

verified claim and answer to the complaint, citing Thompson's non-compliance with Rules G(5)

and G(6).  The United States now submits this brief in support of its motion to strike.

## **DISCUSSION**

Thompson's claim and answer should be struck for two independent reasons.  First,

Thompson's amended claim does not meet the pleading standard set out in Rule G(5).  Second,

the United States served Thompson with standing-related discovery, and Thompson failed to

adequately respond to those requests.  Standing alone, each of these procedural failings provides

a sufficient basis on which the Court can and should strike Thompson's ownership claim.  If the

Court chooses not to strike Thompson's, claim, however, the United States requests that the Court

grant the United States' pending motion to continue, direct Thompson to further amend his

ownership claim, and compel Thompson to provide full and adequate responses to discovery within 14 calendar days of the Court's order.

**I.     The Court should strike Thompson's claim because it does not meet the requirements of Rule G(5).**

Standing is an issue in every civil forfeiture lawsuit.  *United States v. 392 Lexington Parkway South*, 386 F. Supp. 2d 1062, 1067 (D. Minn. 2005) (quoting *United States v. One Lincoln Navigator*, 328 F.3d 1011, 1013 (8th Cir. 2003)).  A party who wants to put the United States to its burden of proof must first establish its standing to be a party.  *United States v. 509 Rsapberry Patch Drive, Rochester, New York*, 116 F. Supp. 3d 190, 193 (W.D.N.Y. 2015) ("A claimant bears the burden of establishing standing"); *see also United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 644 (9th Cir. 2012) ("Although the burden of proving that the property is subject to forfeiture is on the government, 18 U.S.C. § 983(c), the burden of establishing standing is on the claimant") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) and Fed. R. Civ. P. Supp. R. G(8)(c)(ii)(B)).  The standing requirement "ensure[s] that the government is put to its proof only where someone with a legitimate interest contests the forfeiture."  *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 79 (2d Cir. 2002).  A party's obligation to prove standing lasts throughout the entirety of the litigation, and the level of proof required will vary depending on the stage of the proceedings when the United States brings its standing challenge.  *Medalie v. Bayer Corp.*, 510 F.3d 828, 829-30 (8th Cir. 2007) (quoting *Lujan*, 504 U.S. at 561).  For example, at the pleading stage, the claimant may rely on statements in its pleadings to demonstrate its standing.  *Lujan*, 504 U.S. at 561.

Compliance with the standing requirements in Rule G is not a mere technicality; rather, the requirement exists to discourage the filing of false claims and to allow the United States to investigate that matter early in the litigation and, in appropriate cases, put the issue before the

Court for a determination. *See United States v. Various Vehicles, Funds and Real Property Described in Attachment A*, No. No. 2:11CV1528, 2011 WL 6012424, *2 (D.S.C. Oct. 25, 2011) (stating that Rule G allows the United States "to commence discovery on the standing issue in accordance with Rule G(6) without having to guess at the nature of the interest being asserted, and allows the court to dispose of claims that lack merit as a matter of law before the case consumes significant judicial resources.")*.* The claimant's assertion of an ownership interest must be sufficiently specific to place the claimant in danger of perjury for a false declaration. *United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 562-63 (D. Md. 2013) (holding that the claim must be specific enough to put the claimant in jeopardy of a perjury prosecution if the claim is false and allow the United States to focus its discovery requests without having to issue rounds of interrogatories just to find out what it is that the claimant is asserting as the basis for the claim).

If a claim does not meet the pleading requirements, United States can move to strike it, and the Court can consider the motion either as one for a judgment on the pleadings or for summary judgment. *See* Fed. R. Civ. P. Supp. G(8)(c); *see also United States v. $417,143.48*, No. 1:13CV05567, 2015 WL 5178121, *5 (E.D.N.Y. Sept. 2, 2015) ("A claimant who fails to comply with the procedural requirements of Forfeiture Rule G(5) may lose statutory standing."). Here, Thompson's claim fails to meet Rule G's pleading standard; therefore, the Court should grant a judgment on the pleadings in favor of the United States and strike Thompson's claim.

When considering a motion for judgment on the pleadings, the Court should only consider the four corners of the pleading. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) ("[T]he court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the [pleading that is the subject of the motion].")."). The Court considers a motion for judgment on the pleadings under the

same standard as a motion to dismiss and construes the facts in favor of the non-moving party. *See Stebbin v. Boone County, Ark.*, No. 3:12CV03022, 2013 WL 5274288, *1 (W.D. Ark. Sept. 18, 2013) (recognizing that a motion for judgment on the pleadings is "analyzed using the same legal standards as a motion to dismiss"); *see also Students for Sensible Drug Policy Foundation v. Spellings*, 523 F.3d 896 (8th Cir. 2008) (stating that when considering a motion to dismiss, the Court should construe as true the facts in the pleading that is the subject of the motion). The motion presently before the Court concerns Thompson's verified claim of ownership. The facts contained in that claim, even if taken as true, are insufficient to meet the requirements of Rule G(5).

In his claim, Thompson asserts that he is appearing in this action on his own behalf and as an authorized representative of Body by Resilience, LLC. Amended Claim, Dkt. 6-1, at 1. Thompson's claim fails to meet the pleading standard with regard to his individual interest as well his purported effort to represent Body by Resilience.

**1. Thompson has not adequately stated an individual ownership claim.**

With regard to his purported personal interest, Thompson claims that the Defendant Currency was "business proceeds as well as personal savings of Mr. Thompson." Amended Claim, Dkt. 6-1, at 1-2. He said that the personal savings were derived from his employment at Arkansas Children's Hospital and his girlfriend's employment that he saved for approximately five years. *Id*. at 2. Thompson then goes on to say that "[m]ost of the personal savings are monies withdrawn from the business, Body by Resilience and saved by Mr. Thompson." *Id*. When Thompson described his personal interest versus the business interest, he merely stated that "[m]ost of the money at issue in this case is money saved from proceeds of the business, and some of the money is property of the business." *Id*. at 2. He also asserted that he "has an interest in the property that

8

is the subject of this lawsuit as an owner of the property, and he has a possessory interest and a right to possess the property as an owner and/or agent of the owner." *Id.*

Thompson's claim falls short of what Rule G requires. One deficiency in Thompson's claim is that he fails to identify how much of the Defendant Currency he claims belongs to him and how much he claims belongs to the business. That failing is fatal. *See United States v. $154,853.00 in U.S. Currency*, 744 F.3d 559, 562 (8th Cir. 2014) ("The claimant's interest in the property must be stated with some level of specificity."). Here, much like in *$154,853 in U.S. Currency*, the United States seeks the forfeiture of one sum of money that the claimant regards as his own for different reasons. *See id.* at 562 (explaining that the claimant there claimed $4,500 of the defendant currency was money from his employment and that the remaining $150,353 was money the defendant held on behalf of an unidentified bailee). Thompson's vague reference to owning some of the money does not adequately identify what property he claims. *See United States v. $104,250.00 in U.S. Currency*, 947 F. Supp. 2d 560, 563 (D. Md. 2013) (rejecting as deficient a vague claim of ownership and holding that "the vagueness of the claim will require multiple rounds of interrogatories as the Government attempts to zero in on the facts asserted to establish standing to contest the forfeiture. That is the very antithesis of the focused inquiry that the drafters intended and that the interests of justice require."). Thompson's claim of an individual ownership interest is also deficient because he failed to identify his girlfriend and her employer in his claim. *See United States v. $154,853.00 in U.S. Currency*, 744 F.3d at 562.

Finally, Thompson asserted in his original and amended claims that the United States has conceded that Thompson was the owner of the funds. Claim, Dkt. 3, at 1; Amended Claim, Dkt. 6-1, at 1. The United States has not made any such concession. *See* Motion to Stay, Dkt. 8, at 3; *see also* McCree Letter to Sprinkle (May 17, 2016), Exh. 1, at 2-3.

## 2.   Thompson has not adequately stated an ownership claim on behalf of Body by Resilience.

To the extent Thompson has attempted to assert an ownership claim on behalf of Body by Resilience, he has stated little more than a conclusory promise that the business has an interest in the funds.  Thompson asserted that the business generated money by hosting fitness classes and other, undescribed events over the course of approximately four years.  Amended Claim, Dkt. 6-1, at 2.  Thompson's vague assertion of an ownership interest by Body by Resilience is not sufficient to meet the pleading requirements of Rule G.  *See $154,853.00 in U.S. Currency*, 744 F.3d at 562 (rejecting as insufficient a claim that identified the bailor of funds as "another person" rather than describing them by name); *United States v. $579,475.00 in U.S. Currency*, No. 4:15CV00082, 2016 WL 4249812, *3 (E.D. Ark. July 21, 2016) (rejecting a claim as insufficient because it only contained a bare assertion of ownership); *see also United States v. $100,348*, 354 F.3d 1110, 1118-19 (9th Cir. 2004) (courts require more than "conclusory or hearsay allegations of some interest in the forfeited property" because "the danger of false claims in these proceedings is substantial"); *$104,250.00 in U.S. Currency*, 947 F. Supp. 2d at 565-66 (striking as deficient a claim that said the defendant currency was "proceeds of 'personal investments in the entertainment industry, and proceeds of my mother's estate'").[3]

In addition, Thompson's claim on behalf of Body by Resilience is deficient for the same reasons as Thompson's individual claim—namely that the claim does not specify what part of the Defendant Currency the business is claiming.  *See* Fed. R. Civ. P. Supp. R. G(5) (requiring

---

[3] The United States acknowledges that Thompson admitted in his answer to the complaint that Alisha Aubrey is his girlfriend; however, that admission is not sufficient for two reasons. First, Thompson can have more than one girlfriend. And second, an unverified answer is no substitute for a verified claim. *See, e.g., United States v. $102,535 in U.S. Currency*, 499 Fed. Appx. 134, 136-37 (3d Cir. 2012) ("[V]erification is an essential element of any claim because of the substantial danger of false claims") (citations omitted).

claimants to identify the specific property they are claiming); *$154,853 in U.S. Currency*, 744 F.3d at 562 (requiring specificity).

### 3. The Court should not grant Thompson an opportunity to amend his deficient claim because he has known of the deficiencies for months and has simply chosen to ignore them.

Thompson needs approval of the Court to amend his claim, and this Court should exercise its discretion not to allow him to amend his claim at this point in the proceedings. *See* Fed. R. Civ. P. 15(a)(2) (requiring a party seek leave of the Court to amend a pleading if more than 21 days have passed since the party served the pleading). "[D]enial of leave to amend may be justified by undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice of the opposing party." *United States ex rel. Gaudineer & Comito, L.L.P. v. Iowa*, 269 F.3d 932, 936 (8th Cir. 2001). The United States advised Thompson of the deficiencies in his claim six months ago, and he made a strategic choice to address only some of the deficiencies the United States identified. *See* McCree Letter to Sprinkle (May 17, 2016), Exh. 1, at 1-6. Thompson's strategic choice is a sufficient reason to deny him leave to amend. *See $104,250.00 in U.S. Currency*, 947 F. Supp. 2d at 566 (refusing to provide an opportunity to amend when claimant had prior notice of deficiencies in her pleadings and her continuing failure appeared to be a strategic choice).

Further, as discussed in further detail in Section II below, the United States sought more information through the discovery process, and those responses were also deficient. Among other things, Thompson again failed to delineate between his personal interest in the Defendant Currency and the interest he was asserting on behalf of Body by Resilience. The Court should consider his failings in discovery in deciding whether to permit Thompson a third opportunity to provide information that he should have provided with his initial claim. *See id.* ("Justice is not served by

forcing the Government to engage in multiple rounds of discovery before it can hone in on the facts the Claimant is offering to establish [his] standing to contest the forfeiture.  Too much time is wasted in civil forfeiture cases as the parties parry the threshold issue of standing.").

**II.     Thompson's claim should be struck because he has failed to adequately respond to special interrogatories.**

Thompson refused to respond in full to the special interrogatories propounded by the United States; his refusals to participate in the standing-related discovery process provide a separate basis on which the Court can and should rely to strike his claim and answer.  Fed. R. Civ. P. Supp. R. G(8)(c); *United States v. $25,982.28 in U.S. Currency*, No. 5:14CV00150, 2015 WL 410590, *3 (N.D. Ohio Jan. 29, 2015) ("Rule G(6) special interrogatories are not run-of-the-mill discovery, but rather are an important tool for the government to sort out colorable from fraudulent claims and to determine a claimant's standing—a threshold issue in civil forfeiture actions.").  Despite repeated requested from the United States, Thompson has not addressed any of the deficiencies in his answers or provided any explanation why he failed to provide full answers.

*Special Interrogatory No. 1*

Special Interrogatory No. 1 directed Thompson to provide information about places he has lived and worked since 2010. Thompson Answers to Special Interrogatories, Exh. 8, at 1.  In one portion of his answer, Thompson identified an address on Monroe Street.  *Id*.  Thompson's answer did not indicate the length of time during which he and Body by Resilience have used the Monroe Street address for work purposes.  *Id*.  Additionally, Body by Resilience has more than one business address, *see* Amended Claim, Dkt. 6-1, at 2; Thompson's answer should also provide information regarding the second address.

*Special Interrogatory No. 2*

Special Interrogatory No. 2 directed Thompson to identify documents that support his answer to Special Interrogatory No. 1.  Thompson Answers to Special Interrogatories, Exh. 8, at 1-2.  Thompson said that there no records that support his response.  *Id.* at 2.  That is not accurate because there are records that could support his answer to Special Interrogatory No. 1.  If Thompson or Body by Resilience is leasing the spaces out of which the business operates, the company's lease agreements would fall within the scope of this request. Alternatively, if Thompson or Body by Resilience owns the spaces, Thompson should have provided a copy of the company's mortgage documents. Thompson should have given the same information regarding his residence. Those records would evidence his right to occupy those properties and confirm the dates he identified in Special Interrogatory No. 1.

*Special Interrogatory No. 3*

Special Interrogatory No. 3 directed Thompson to elaborate on his interest in the Defendant Currency and told him to provide certain information about the transactions that generated the funds.  *Id.* at 2.  Thompson said that the currency came from, among other things, account withdrawals from PayPal, Bank of America, and Regions.  *Id.* at 2.  Thompson failed to identify the account number for the accounts from which the funds were withdrawn and the dates of the withdrawals.  Further, Thompson also failed to explain why he received the funds that he withdrew from those accounts, and he did not identify when he received the funds.  Thompson also failed to answer the portion of this special interrogatory that directed that he say how much money belonged to him and how much belonged to Body by Resilience.  Finally, Thompson's answer to this special interrogatory was inconsistent with his amended claim and prior statements to law enforcement. *See id.* at 3 (stating that Thompson has a personal interest in all of the money); Amended Claim,

Dkt. 6-1, at 1-4 (implying that Body by Resilience owned part of the money and including Thompson's signature both in his individual capacity and as an authorized representative for the business); Answer, Dkt. 5, at 2 (admitting that Thompson told investigators that the money belonged to him and Alisha Aubrey). The purpose of discovery to prevent trial by surprise or ambush. *American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002). Thompson's refusal to provide clarity as to who truly owns the funds and the source of those funds frustrates this purpose and deprives the United States of its ability to assess the accuracy of Thompson's statements.

*Special Interrogatory No. 4*

Special Interrogatory No. 4 directed Thompson to identify documents that support his answer to Special Interrogatory No. 3. Thompson Answers to Special Interrogatories, Exh. 8, at 2. Thompson said in his answer that the United States is in possession of "most" of the documents that are responsive to this request and that he is searching for additional documents. *Id*. Thompson failed to identify what documents the United States seized from him that would be responsive to this request; that type of response is not sufficient to satisfy his discovery obligation. *See* Fed. R. Civ. P. Supp. R. G(1) ("To the extent this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure apply."); Fed. R. Civ. P. 33(d) (requiring that a party who chooses to respond to an interrogatory with records "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could"). The importance of Thompson's adherence to this rule is underscored by the fact that the United States has in its custody several devices that investigators estimate contain more than 600 gigabytes of information. *See Board of Educ. Of Evanston Tp. High School Dist. No. 202 v. Admiral Heating and Ventiliating, Inc.*, 104 F.R.D. 23, 36 n.20 (N.D.

14

Ill. 1984) ("[T]he burden to a stranger of rummaging through what may be massive job files to find the "smoking gun," coupled with the inculpatory nature of the documents covered by the request, justifies placing the burden on the discovered rather than the discovering party.").

Further, Thompson's promise to identify or produce additional documents at some indeterminate time in the future does not comport with his discovery obligations. *See Novelty, Inc. v. Mountain View Marketing, Inc*., 265 F.R.D. 370, 376 (S.D. Ind. 2009) ("If the responding party cannot conduct a 'careful and thorough' search for all responsive documents within the [time provided by the rule], it 'ha[s] an obligation to seek appropriate extensions . . . Unilaterally deciding to conduct a cursory initial search to be followed by 'rolling' productions from subsequent, more thorough, searches is not an acceptable option."); *see also Jacoby v. Hartford Life and Accident Insurance Company*, 254 F.R.D. 477, 478 (S.D.N.Y. 2009) (holding that when a party responds to discovery, that party has a duty to respond with information in its possession, custody, and control); *Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006) ("Control has been construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought on demand.").

*Special Interrogatory No. 5*

Special Interrogatory No. 5 directed Thompson to describe how the Defendant Currency was delivered to him, identify the reason for the delivery, and explain who paid him and how he was paid. Thompson Answers to Special Interrogatories, Exh. 8, at 3. Thompson said that "the money was delivered in cash for services provided to clients and numerous parties and functions." *Id*. He also said that "the payees were numerous, and some of them are reflected in documents that were seized by the government and are not currently in the possession of the Claimant." *Id*. Thompson failed to explain what services he provided to clients, and he only made vague

references to "parties and functions."  Thompson's descriptions of the parties and events should have included specific information that would allow the United States to confirm that the events took place.  For example, the answer should have provided the dates, locations, and names of the hosts of the events.

Further, Thompson's response that "some" of the people who made payments to him were reflected in documents that the United States seized is insufficient.  The answer does not specify what types of documents would include the information he believes to be responsive to this request.  Additionally, he only says that "some" of the payees are reflected in those documents.  Even if Thompson's reference to documents was sufficient (and it was not), his answer failed to identify all of the any of the payees whose names would not be reflected in the seized documents.

To the extent Thompson asserts that his portion of the money came from his employer; his response is insufficiently vague.  Thompson's answer should have identified what employer he was referencing.  Thompson says that some of the money was delivered to him to possess until it was needed for personal or business expenditures; that answer is insufficiently vague.  Thompson should have explained whose personal expenditures he was referring to, how much of the Defendant Currency was delivered to him for that purpose, the date when was the delivery made, and who made the delivery.  Thompson should have also identified the business he was referring to, the amount of the Defendant Currency that was delivered to him for that purpose, when the delivery was made, and who made the delivery.  Further, the request directed Thompson to identify the account into the funds were deposited and from which they were later withdrawn.  Thompson indicated in response to Special Interrogatory No. 3 that at least some of the money flowed through accounts with PayPal, Bank of America, and Regions. Thompson failed to identify those accounts and any others that would be responsive to this request.

_Special Interrogatory No. 6_

Special Interrogatory No. 6 directed Thompson to identify documents that support his answer to Special Interrogatory No. 5. _Id_. at 3-4. Thompson referred the United States to tax records and other records attached to his initial answers. _See id_. at 4. Thompson also said that the United States is in possession of "most" of the documents that are responsive to this request, he is searching for additional documents, and if he finds additional documents he will produce them. _See id_. at 3-4. Thompson's answer did not fully respond to this special interrogatory. Thompson failed to identify what documents the United States seized from him that would be responsive to this request; that type of response is not sufficient to satisfy his discovery obligation. _See_ Fed. R. Civ. P. 33(d). Further, Thompson's promise to identify or produce additional documents at some indeterminate time in the future does not comport with his discovery obligations. _See Novelty, Inc_., 265 F.R.D. at 376.

_Special Interrogatory No. 7_

Special Interrogatory No. 7 directed Thompson to identify all sources of support he received from 2010 until the present and to state whether he reported he receipt of those funds to the Internal Revenue Service and any other federal or state taxing authority. Thompson Answers to Special Interrogatories, Exh. 8, at 4. Thompson did not fully respond to this interrogatory. Thompson did not provide any amounts that he received from the sources that he identified or state the type of support he received from each source. Further, he did not address whether his sources of income have been reported to the appropriate taxing authorities.

_Special Interrogatory No. 8_

Special Interrogatory No. 8 directed Thompson to identify documents that support his response to Special Interrogatory No. 7. Thompson Answers to Special Interrogatories, Exh. 8, at

17

4.  Thompson referred the United States to tax records and other records attached to his initial answers. *See id*.  The only records attached to Thompson's answers were six Form W-2s from Arkansas Children's Hospital for tax years 2010 through 2015, a 13-page document labeled gifts, and a 12-page document labeled loans. *See id*. at 9-39.  Thompson also said that the United States is in possession of documents that are responsive to this request, he is searching for additional documents, and if he finds additional documents he will produce them.  *Id*. at 4.  Thompson's answer did not fully respond to this special interrogatory.  First, Thompson's answer to this request should also include, at minimum, a reference to or a copy of the actual returns he and Body by Resilience filed with federal and state taxing authorities.   Thompson failed to identify what documents the United States seized from him that would be responsive to this request; that type of response is not sufficient to satisfy his discovery obligation.  *See* Fed. R. Civ. P. 33(d).  Further, Thompson's promise to identify or produce additional documents at some indeterminate time in the future does not comport with his discovery obligations.  *See Novelty, Inc.*, 265 F.R.D. at 376.

*Special Interrogatory No. 9*

Special Interrogatory No. 9 directed Thompson to provide certain information if he is claiming the Defendant Currency belongs to a third party. Thompson Answers to Special Interrogatories, Exh. 8, at 5.  Thompson simply responded that "[a] portion of the money was for use in the business, body By Resilience [sic].  The Claimant is a partner in that business."  *Id*. at 5.  Thompson's answer does not clearly state that he is making a claim on behalf of himself and Body by Resilience, nor does it state that he is not making that type of claim.  In his answer to Special Interrogatory No. 3, Thompson said that he has a personal ownership interest in all of the Defendant Currency; however, Thompson's answer to Special Interrogatory No. 9 suggested that a portion of the money belongs to Body by Resilience. Body by Resilience is a limited liability

18

company, which means it is a separate person under law. To the extent Thompson is asserting a claim on behalf of Body by Resilience, he is asserting a claim on behalf of a third party. So, for example, his response to Special Interrogatory No. 7 should include responses for himself and the company.  Thompson's response should have included why he was in possession of money belonging to Body by Resilience and the date he took possession of the property.

*Special Interrogatory No. 10*

Special Interrogatory No. 10 directed Thompson to identify documents that support his response to Special Interrogatory No. 9. *Id*. at 5.  Thompson said that he is searching for responsive documents and that if he finds additional documents he will produce them. Thompson's promise to identify or produce additional documents at some indeterminate time in the future does not comport with his discovery obligations.  *See Novelty, Inc.*, 265 F.R.D. at 376..

*Special Interrogatory No. 11*

Special Interrogatory No. 11 directed Thompson to provide the names of individuals who could corroborate his ownership claim, and it also instructed Thompson to describe the substance of the information he anticipates that individual can provide. Thompson Answers to Special Interrogatories, Exh. 8, at 11.  In response, Thompson only identified Alisha Aubrey.  *See id* at 5. Thompson's answer omitted pertinent individuals.  Thompson's answer should have included the information on all individuals who provided money to Thompson and Body by Resilience, and the answer should have identified any of the other employees or agents of Body by Resilience who can confirm Thompson's ownership interest in the business.

*Special Interrogatory No. 12*

Special Interrogatory No. 12 directed Thompson to identify documents that support his response to Special Interrogatory No. 11. *Id*. at 5-6.  Thompson said that the United States is in

possession of documents that are responsive to this request, he is searching for additional documents, and if he finds additional documents he will produce them.  *See id*. at 6.  Thompson's answer did not fully respond to this special interrogatory.  Thompson failed to identify what documents the United States seized from him that would be responsive to this request; that type of response is not sufficient to satisfy his discovery obligation.  *See* Fed. R. Civ. P. 33(d).  Further, Thompson's promise to identify or produce additional documents at some indeterminate time in the future does not comport with his discovery obligations.  *See Novelty, Inc*., 265 F.R.D. at 376.

### III.    If the Court does not find that Thompson's procedural failings in his claim and discovery responses warrant the striking of his claim and answer, the Court should grant the United States' pending motion to continue and also compel Thompson to fully respond to the special interrogatories.

The United States maintains that the facts of this case warrant the striking of Thompson's claim and answer; nevertheless, the United States recognizes that whether to grant that relief is a matter that is left to the discretion of the Court.  *See, e.g., United States v. $29,410.00 in U.S. Currency*, 600 Fed. Appx. 621, 623-24 (10th Cir. 2015).  If the Court chooses to not to strike Thompson's claim and answer, the Court should compel Thompson to supplement his answers to special interrogatories to address the deficiencies outlined above.  As an initial matter, the United States notes that each special interrogatory is proper under Rule G.  *See United States v. $133,420.00 in United States Currency*, 672 F.3d 629, 642 (9th Cir. 2012) (holding that special interrogatories are not limited to asking about the claimant's identity and nature of his interest in the property because if they were, they would ask for nothing more than what Rule G(5) requires to be included in the claim); *see also United States v. $307,970.00 in U.S. Currency*, No. 4:12CV00136, 2013 WL 4095373, *4 (E.D.N.C. Aug. 13, 2013) (approving a set of special interrogatories and explaining how each request relates to the question of standing).  Further, Thompson has not objected to any special interrogatory on any basis; therefore, he cannot rely on

any objections to refuse to answer the special interrogatories now.  *See* Fed. R. Civ. P. Supp. R. G(1) ("To the extent this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure apply."); Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity.  Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.").  If the Court does not award the United States the principal relief it seeks, the United States would request in the alternative that the Court direct Thompson to provide full answers within 14 calendar days of the Court's order. The United States served Thompson with special interrogatories on September 20, 2016, and he did not respond until October 24, 2016.  McCree Letter to Sprinkle (Sept. 20, 2016), Exh. 3, at 1; McCree Email with Sprinkle (Oct. 24, 2016), Exh. 7, at 1.  In addition to filing his responses late, Thompson has known of the deficiencies in his answers since October 25, 2016.  *See* Fed. R. Civ. P. Supp. R. G(6)(b) (providing 21 days from service to respond to special interrogatories); McCree Letter to Sprinkle (Oct. 25, 2016), Exh. 9, at 1. Two weeks is sufficient time for Thompson to address the deficiencies in his responses.

Finally, the current discovery deadline in this case expires on November 23, 2016.  The United States has moved to continue the trial date and requested the issuance of an amended scheduling order.  *See* Dkt. 12.  If the Court grants the United States' motion to strike Thompson's claim in its entirety, the United States concedes that the pending motion for a continuance can be denied as moot.  *See United States v. Two Bank Accounts*, No. 4:06CV04005, 2009 WL 92449, *2 (D.S.D. Jan. 5, 2009) (demonstrating that once a claimant's claim is dismissed, that claimant is no longer a party to the forfeiture action); *see also United States v. Assorted Jewelry Valued at $13,430.00*, Case No. 1:11CV00777, 2013 WL 775542, *2 (D.N.J. Feb. 13, 2013) ("In the absence of a verified claim or a valid answer to the Government's Complaint, the Government is entitled

21

to default judgment pursuant to Fed. R. Civ. P. 55(a).").  However, if Thompson is provided more time to correct his deficient claim and discovery responses, the United States asks that this Court also grant the United States' motion to continue the trial and for the issuance of an amended scheduling order so that it can have a full and fair opportunity to assess Thompson's discovery responses and to conduct other discovery needed to prepare this case for pretrial motions and trial.

## CONCLUSION

Nikkolas Thompson's failure to follow the pleading requirements and his refusal to provide full and complete answers to special interrogatories warrant the striking of his claim and answer. The United States requests that the Court grant its motion to strike.

CHRISTOPHER R. THYER
UNITED STATES ATTORNEY

By:   */s/ Cameron C. McCree*
      CAMERON C. McCREE (2007148)
      Assistant U.S. Attorney
      P.O. Box 1229
      Little Rock, Arkansas 72203
      (501) 340-2624
      Cameron.McCree@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on November 19, 2016, I filed this brief with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ Cameron C. McCree*
CAMERON C. McCREE