IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA                                                          PLAINTIFF

v.                        CASE NO. 4:16CV00168 BSM

$284,950.00 IN U.S. CURRENCY                                                      DEFENDANT

### BRIEF IN SUPPORT OF THOMPSON'S RESPONSE TO UNITED STATES' MOTION TO TO STRIKE NIKKOLAS THOMPSON'S VERIFIED CLAIM AND ANSWER TO THE COMPLAINT

**COMES NOW** Nikkolas Thompson, individually, and on behalf of Body By Resilience, LLC, and hereby states the following Response opposing the United States' Motion to Strike his Claim and Answer to the Complaint:

### BACKGROUND

This case is about unchecked executive power of the government. It is about procedural maneuvering to deny fundamental rights at the unbridled discretion of government officials. It began more than a year ago in late summer, on September 29, 2015. In Mr. Thompson's luggage was money. Approximately $284,950.00. Upon seeing the money, government officials at the airport summoned Mr. Thompson, and took him into a room for interrogation. After questioning for some time, Mr. Thompson was permitted to leave, but not with his money.

Over the next several months, the government prepared the course for the present action. Congress provides ninety (90) days after a person files a claim for the money the government to articulate reasons why it can succeed in a civil forfeiture action. See U.S.C. § 983(a)(3)(A). On March 30, 2016, six months after it began its investigation, the government filed this case.

The government's case is one that has never been about due process or proving

1

by a preponderance of the evidence that Mr. Thompson engaged in a drug enterprise that netted him the money the government took. Rather, the government's tactics have been about avoidance. The government has sought multiple delays in an attempt to avoid a day in court. It has even requested an indefinite delay based on vague suggestions of a criminal investigation.

Now, the government attempts a new level of avoidance – it wants to exclude Mr. Thompson's claim and outright avoid having to prove its case.

### I. Mr. Thompson's claim meets the requirements of Rule G(5) and establishes that he has standing.

Mr. Thompson's claim makes clear that he has an interest in the money that he possessed as a bailee of some of the property and as the joint owner of the remainder of the property. Indeed, the claim makes clear that property belonging to Mr. Thompson, his girlfriend, and their business enterprise were comingled and in his possession at the time of his encounter with government authorities. Furthermore, Mr. Thompson's responses to special interrogatories comply with the rules of civil procedure and Rule G(6).

### a. Mr. Thompson has a legal ownership interest.

### 1. Assertions in the pleadings establish that Mr. Thompson has standing.

The Verified Claim states that Mr. Thompson saved money from his employment with UAMS, and his girlfriend saved money from her employment. See *Amended Claim* at ¶¶ 5, 6, and 9. Mr. Thompson states that the money was saved over the course of the approximately five years. *Id.* Mr. Thompson further stated that most of the money was taken from the business operated by Mr. Thompson and his girlfriend. See *Amended Claim* at ¶¶ 9. In its pleadings, the government has repeatedly stated the

identity of Thompson's girlfriend, Alisha Aubrey.

The Government admitted in its Verified Claim that "Thompson said that the Defendant Currency was proceeds of their business, Aubrey's paid employment with Keller Williams Realty, and Thompson's paid employment as a patient transport for Arkansas Children's Hospital." See *Verified Claim* at ¶ 19.

The Verified Claim further describes the type of business Mr. Thompson and his girlfriend engage in. The pleading states, "The transactions of the business that Mr. Thompson engages in include payments for fitness classes and events offered by the business, Body By Resilience, provided over the course of approximately four years at up to two business locations in Little Rock and Conway." See *Amended Claim* at ¶ 8.

These assertions detailing his employment, the nature of his business, his girlfriend's employment, and their joint savings forms a factual basis for Mr. Thompson's claim that is sufficient to meet the requirements of Rule G(5). The strength of that factual basis is reinforced by the fact of his actual possession of the money. The factual basis outlined in the pleadings is enough to defeat the government's present attempt to avoid having to prove its case. Still, the documents it has obtained in this matter through discovery and other means further supports Mr. Thompson's claim.

**2. Documents obtained by the government establish that Mr. Thompson has standing in this case.**

In addition to Mr. Thompson's statements regarding his ownership interest in the property, the government has obtained further information that supports Mr. Thompson's claim.

First, Mr. Thompson responded to the Special Interrogatories propounded by the government and provided further information about his ownership of the property. Mr.

3

Thompson stated that he obtained some of the cash by cash payments from clients at parties held at his facility, and he withdrew cash from PayPal and bank accounts. See responses to Special Interrogatories Nos. 3 and 5.

To establish his income from employment, from which some of the money was derived, Mr. Thompson produced tax returns for his employment for the past fine years. For some of the business capital, Mr. Thompson produced 25 pages listing funds obtained for the business together with dates. See *Govt's BIS Motion* at p. 18. Mr. Thompson states in response to Special Interrogatory No. 9 that he is a partner in the business.

In addition, the government obtained a significant number of business and financial documents from the home of Mr. Thompson and Ms. Aubrey and from two of their business locations. In addition, it obtained what it calculates to be 600 gigabytes of electronic data from Thompson, Aubrey, and their business. These documents taken by the government include most of the available documentation of their business operations. The documents include information related to revenue, transactions, clients, expenses, and more.

Taken together, the government has in its possession a treasure trove of information that alleviates any risk that Mr. Thompson's claim might be a false claim that just anyone could assert against the property in this case. Plainly, an uninterested person cannot demonstrate the level of connection to the property that Thompson has established.

More significantly, the government should not be allowed to suddenly take and keep from the Claimant a trove of business and financial documents together with more than 600 gigabytes of information, and then, move to dismiss his claim because he

cannot produce the documents it took from Mr. Thompson and the business.

Unequivocally, Mr. Thompson has established that he has standing to demand that the government actually state its case for forfeiture in this matter. Accordingly, the Motion to Strike Mr. Thompson's Verified Claim and Answer should be denied.

### 3.  The law that establishes that Mr. Thompson has standing.

The government cites cases to suggest that Mr. Thompson's statements are insufficient to establish his right to pursue his claim. But, none of the government's cited cases describes facts that are analogous to the facts in this case. The cases generally stand for the proposition that the filing of false claims should be discouraged, and the government should not be required to put on proof when no one with a legitimate interest has come forward. In this case, none of the government's stated concerns is implicated.

First, there is no doubt that Mr. Thompson has stated how he obtained an ownership interest in at least a portion of the money. The government cites a recent opinion from the Unites States Court of Appeals for the Eighth Circuit to suggest that Mr. Thompson's statements are insufficient to establish that he has standing. On the contrary, the case illustrates that Mr. Thompson indeed met the requirements of the law.

The government quoted *United States v. $154,853.00 in U.S. Currency*, for the proposition that "The claimant's interest in the property must be stated with some level of specificity." 744 F.3d 559, 562 (8th Cir. 2014). In that case, the government seized $154, 853 during a traffic stop. *Id.* at 561.

During a stop, the officer searched the car and found a black duffle bag in the trunk containing money and drugs. The court recalls the facts of the stop:

When asked what was inside the bag, [the driver] stated, "I don't know."

> The bag had an overwhelming odor of marijuana and inside was marijuana shake as well as a large sum of U.S. currency in heat-sealed packages and a cell phone tracking device. When asked if he knew how much money was in the bag, [the driver] stated he had never counted it and said someone had given him the money. The bag contained a total of $154,853.00.

*Id.* at 561.

The driver was arrested. After his arrest the driver signed a Disclaimer of Ownership of Assets and Waiver of Rights to Notice of Seizure form stating he was not the owner of the $154,853 found in the bag and had no claim for its return, that the owner of the money was unknown, and that it had been given to him by another person. *Id.* at 561.

After filing a forfeiture claim, the government submitted Special Interrogatories, which the claimant refused to answer, stating in response to each request:

> I object to answering this interrogatory for the reason that any answer I would give would be evidence derived from prior violations of the Fourth Amendment and Fifth Amendment to the United States Constitution and that I claim the Fourth Amendment and Fifth Amendment exclusionary rules as a privilege against answering at this time.

*Id.* at 562.

The district court granted a motion by the government striking the driver's claim, but the court permitted the driver to amend his claim. The amended claim stated the following interest in the property:

> Claimant has an ownership and possessory interest in the seized U.S. Currency. $4,500.00 more or less of the U.S. Currency **was found on Claimant's person and earned by Claimant through his employment**. The remaining $150,353 more or less of the U.S. Currency was given to Claimant by another person with Claimant as bailee.

*Id.* at 562 (emphasis added).

On that statement of interest in the property, the court dismissed the driver's

6

claim again, concluding it did not comply with the requirements of Supplemental Rule G(5)(a)(iii). *Id.* at 562. The Eighth Circuit ruled that the district court abused its discretion, and it reversed the order dismissing the driver's claim. *Id.* at 565.

In its opinion, the Eighth Circuit held that "[The driver] Marcus would certainly have an ownership interest in earned income." *$154,853.00 in U.S. Currency*, 744 F.3d at 564.

The court stated further: "Therefore, it is unclear why the district court struck the claim as to the $4,500 Marcus claimed to have earned "through his employment." Such a claim appears sufficient to state a colorable "ownership interest" as required by 18 U.S.C. § 983(d)(6)(A)…" *Id.*

Similarly, in the present case, Mr. Thompson states that the money was earned through his employment, through his girlfriend's employment, and through the business venture. Mr. Thompson produces tax documents showing his income and other documents outlining other monies received. The government has a trove of other documents in its possession that outline the operations of the business and its customers. Even more than the bare statement in the government's cited case, the assertions and documents produced in this case are sufficient to state a colorable ownership interest as required by relevant law.

To attempt to overcome the weight of the evidence, the government tries to make this case similar to the facts in a case in a Maryland district court. In *United States v. $104,250.00 in U.S. Currency*, the Maryland district court stated, "Here, the Claimant asserts only that the money was proceeds of 'investments in the entertainment industry, and proceeds of my mother's estate.' There is no way, given such vague notions of her connection to the seized currency, that the Government could propound focused

interrogatories that test the truthfulness of her claim." 947 F. Supp. 2d 560, 565-66 (D. Md. 2013).

First, some of the interpretations of law espoused by the Maryland court are inconsistent with the Eighth Circuit and would make the forfeiture laws unconstitutional. Second, Mr. Thompson's assertions are developed much further than the statements, "investments in the entertainment industry or "proceeds of my mother's estate." Mr. Thompson described the particular investment – his business. He described his employment income. He described the nature of the business and the sources of much of the money. Accordingly, the government's cited case is off-point and inapplicable in addition to being wrong according to Eighth Circuit rulings.

The law supports the conclusion that Mr. Thompson has shown that he has standing to demand that the government actually state its case for forfeiture in this matter. Accordingly, the Motion to Strike Mr. Thompson's Verified Claim and Answer should be denied.

### b. Mr. Thompson has a legal possessory interest as a bailee.

Mr. Thompson asserts an ownership interest in the currency at issue here, because of his joint savings and ownership with Ms. Aubrey. Nonetheless, to the extent that any of the money is legally owned by the business or Ms. Aubrey alone, Mr. Thompson has demonstrated that he has a legal right to possess the money as a bailee.

In his claim, he stated that he has a possessory interest and a right to possess the property as an owner and/or agent of the owner. See *Amended Claim* at ¶ 10. Throughout the pleadings, Mr. Thompson asserts that the money from identified sources came into his possession for him to hold.

The government tries to suggest that Mr. Thompson failed to identify the bailor, and therefore, he cannot have standing as a bailee. Citing *United States v. $154,853.00 in U.S. Currency*, 744 F.3d at 562, the government imagined, "Thompson's claim of an individual ownership interest is also deficient because he failed to identify his girlfriend and her employer in his claim." See *Govt's BIS Motion* at p. 9.

But the government itself stated in its initial pleadings that Mr. Thompson identified Alisha Aubrey and the business, Body By Resilience. Thus, Mr. Thomson's references to those potential bailors is wholly distinguishable from the unknown bailors in the government's cited case.

The law supports the conclusion that Mr. Thompson has shown that he has an interest as a bailee in any property that he does not personally own. Accordingly, the Motion to Strike Mr. Thompson's Verified Claim and Answer should be denied.

## II.    Any judgment on the pleadings should be in favor of Mr. Thompson.

The government argues that it should prevail in a judgment on the pleadings:

> "If a claim does not meet the pleading requirements, United States can move to strike it, and the Court can consider the motion either as one for a judgment on the pleadings or for summary judgment. See Fed. R. Civ. P. Supp. G(8)(c); see also United States v. $417,143.48, No. 1:13CV05567, 2015 WL 5178121, *5 (E.D.N.Y. Sept. 2, 2015) ("A claimant who fails to comply with the procedural requirements of Forfeiture Rule G(5) may lose statutory standing."). Here, Thompson's claim fails to meet Rule G's pleading standard; therefore, the Court should grant a judgment on the pleadings in favor of the United States and strike Thompson's claim."

See *Govt's BIS Motion* at p. 7.

The government's assertion here is wrong like the others. Indeed, the government has not stated facts or even made allegations that are sufficient to meet its burden on all elements required for forfeiture. The government has wholly failed to assert any nexus between the property and any violation of law that would give rise to

9

forfeiture. In addition, the government failed to state "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial", as required by Supplemental Rule G(2)(a)-(f). See *United States v. Real Prop. & Premises*, 657 F. Supp. 2d 1060, 1065–66 (D. Minn. 2009). The government's outright failure to state a claim in this matter is the subject of a forthcoming motion to dismiss the government's Complaint.

Accordingly, no reading of the pleadings could establish that the property is subject to forfeiture. Accordingly, the government's continued seizure of the property is unreasonable, and it continues to violate Mr. Thompson's Fourth Amendment rights against unreasonable seizures. Accordingly, the relief sought by the government should be denied.

## **MOTION TO HOLD PORTIONS OF THE CIVIL FORFEITURE STATUTES UNCONSTITUTIONAL**

The interpretation of the Supplemental Rules for Certain Admiralty and Maritime Claims and Asset Forfeiture Actions, Rules G(5)-(6) urged by the government would render the forfeiture statutes and Rules, including, but not limited to, Rules G(5)-(6); 18 U.S. Code § 981(b); and 18 U.S. Code § 983 unconstitutional.

The application requested by the government fails to afford Mr. Thompson and body By Resilience substantive due process required by the Fifth Amendment to the United States Constitution. Also, it would work an unconstitutional taking and violate Mr. Thompson's rights against unreasonable search and seizure guaranteed by the Fourth Amendment to the United States Constitution.

The deprivation of Mr. Thompson's right to due process of law before taking his property is the deprivation of a fundamental right. Accordingly, the government's

interest must be compelling, and the law must be narrowly tailored the law to achieve that interest.

The government's stated interest in effecting such a shift is not served in this case, where there is virtually no risk that Mr. Thompson's assertion of standing is invalid.  Accordingly, the government's interest is not compelling, and its law is not narrowly tailored to achieve its ostensible interest.

Additionally, the requirement the government seeks to impose on Mr. Thompson would effectively shift the burden of proof in civil forfeiture actions from a preponderance of evidence by the government to a preponderance of evidence by the claimant.  That shifting of the burden of proof would make the interpretation of the law inconsistent with the express language of the law.

The Claimant incorporates all other statements and assertions made in this document into his Motion to Hold Portions of the Civil Forfeiture Statutes Unconstitutional. Accordingly, the statutes mentioned and alluded to herein should be held unconstitutional, and the government's motion should be denied.

WHEREFORE, I, Nikkolas Thompson, individually, and on behalf of Body By Resilience, LLC, respectfully request that the offending statutes and Rules be held unconstitutional and the United States Motion to Strike my Amended Claim and Answer to the Complaint be denied.  Nikkolas Thompson, individually, and on behalf of Body By Resilience, LLC, prays further that this Court grant attorney's fees and costs and all other legal and equitable relief to which the Plaintiff is entitled.

Respectfully submitted,

**NIKKOLAS THOMPSON individually,
and on behalf of Body By Resilience, LLC,
as authorized representative**

By:/s/ Maximillan Sprinkle
Maximillan Sprinkle, ABN 2013030
Sprinkle Firm
300 Spring Street, Suite 604
Little Rock, AR 72201
Telephone: (501) 235-8222
FAX:      (501) 235-8210
Email:    max@sprinklefirm.com

*Attorney for Claimant*

## CERTIFICATE OF SERVICE

I, Maximillan Sprinkle, do hereby certify that on this 6th day of December, 2016, I filed the forgoing with the Clerk of the Court for the United States District Court, Eastern District of Arkansas using the CM/ECF system.  And I served the same by U.S. Mail, postage prepaid to the following.

United States Attorney's Office
Attn:  AUSA Cameron C. McCree
425 W. Capitol Avenue, Suite 500
Little Rock, Arkansas 72201-3536

  /s/ Maximillan Sprinkle
MAXIMILLAN R. X. SPRINKLE