1      IN THE UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF ARKANSAS
2                WESTERN DIVISION

3    UNITED STATES OF AMERICA,

4           Plaintiff,

5     v.                              No. 4:16CV00168 BSM

6    $284,950.00 IN U.S. CURRENCY,        January 23, 2017
                                          Little Rock, Arkansas
7           Defendant,

8    NIKKOLAS THOMPSON,

9           Claimant.

10

11               **TRANSCRIPT OF MOTIONS HEARING**
             BEFORE THE HONORABLE BRIAN S. MILLER,
12                UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   On Behalf of the Government:

15       MR. CAMERON CHARLES MCCREE, Assistant U.S. Attorney
         MS. STACY WILLIAMS, Assistant U.S. Attorney
16          United States Attorney's Office
            Eastern District of Arkansas
17          425 West Capitol Avenue, Suite 500
            Post Office Box 1229
18          Little Rock, Arkansas  72203-1229

19

20   On Behalf of the Claimant:

21       MR. MAXIMILLAN SPRINKLE, Attorney at Law
            Sprinkle Firm
22          1623 South Broadway
            Little Rock, Arkansas  72206

23

24

25        Proceedings reported by machine stenography; transcript
     prepared utilizing computer-aided transcription.


                    Judith A. Ammons, RPR, CRR, CCR
                     United States Court Reporter

1          P R O C E E D I N G S

2     (Proceedings commencing in chambers at 2:01 p.m.)

3          THE COURT:  Y'all have a seat.  Have a seat,

4     everybody.

5          Now, this is the case of United States of America versus a

6     bunch of money, $284,950, in U.S. currency.  This case was

7     filed, and if I remember correctly -- what's the name -- this

8     gentleman's name?  I would imagine it's this gentleman here.

9     Thompson --

10          MR. THOMPSON:  Yes, sir.

11          THE COURT:  -- was coming through the airport out here

12     in Little Rock, and had a case or a bag that had a secret

13     compartment that had all of this money in it.  TSA alerted to

14     it, if I'm not mistaken, and then they put the dogs on it, and

15     the dogs smelled a trace of something.  We don't need to get

16     into details today.  And the bag was taken, turned over to the

17     government.  The government did an investigation.  No ensuing

18     criminal indictment or anything came out of it, but the

19     government wants to forfeit the money.

20          The government filed its forfeiture case.  And I don't

21     have the docket sheet here.  And we are preparing to have a

22     trial on the forfeiture of this money.  The government moved at

23     some point to continue, and I think I entered an order saying

24     we were not going to have an open continuance, we needed to

25     wrap this up and have a trial and see what happens.

1   In November, I think Mr. McCree filed another motion for a

2 continuance and asked for a scheduling order.  And I have been

3 very busy, but when I finally got around to this, I told

4 Mr. Jones, my clerk, I said, "Hey, get in contact with

5 everybody and say let's come in and have a hearing on this."

6 So I didn't really want to have a hearing.  What I wanted to do

7 was -- just so we could be at ease, is have a conversation

8 about where we are headed on this, Mr. McCree.

9   And, sir, you are Mr. Sprinkle?

10     MR. SPRINKLE:  Yes.

11     THE COURT:  You have never appeared in my courtroom?

12     MR. SPRINKLE:  I have not.

13     THE COURT:  What's your first name?

14     MR. SPRINKLE:  It's Maximillan.

15     THE COURT:  That's right.  How could I forget that?

16 Maximillan Sprinkle for Mr. Thompson who is seeking return of

17 his money.  We have -- on behalf of the government, we have

18 Mr. McCree, Cameron McCree, and Mr. McCree has two of his

19 agents with him.

20     MR. MCCREE:  Yes, Your Honor.  I have Special Agent

21 Alan Jukes, who is with Homeland Security.

22     THE COURT:  Mr. Jukes, good to meet you.

23     MR. MCCREE:  And I have Jamar Bennett, who is a task

24 force officer with Homeland Security.

25     THE COURT:  Mr. Bennett, good to meet you.

1          And we have Ms. Williams here, who is one of your newest

2     U.S. Attorneys.

3          Where are we going with this, Mr. McCree?

4               MR. MCCREE:  Your Honor, if I can clarify just a few

5     points.

6               THE COURT:  Yes, please.

7               MR. MCCREE:  The Court mentioned that we filed a

8     motion to stay and the Court responded that it wasn't going to

9     open continuance.  I just want to clarify that that was a

10    motion to stay because the criminal investigation is still open

11    and ongoing.  As of last week --

12              THE COURT:  I think in my order -- now it's coming

13    back to me.  I think in my order I said that this investigation

14    had been open for over a year and we needed to bring this to a

15    close at some point.

16              MR. MCCREE:  Yes, Your Honor.  And so that stay was

17    granted and we were given 45 days.  And in the Court's order,

18    it wasn't clear to me whether that order staying the case held

19    all the deadlines in abeyance even after the 45 days, or if the

20    Court was intending to establish a new scheduling order to

21    account for --

22              THE COURT:  I think I would have to establish a new

23    scheduling order after 45 days.  I think I would have to

24    because if we stayed all the deadlines -- I'm not looking at

25    those right now, but if we stayed all the deadlines, I don't

1    think we could come right back and start right back up without

2    issuing the deadlines, right?

3         MR. MCCREE:  And that's essentially one of our points

4    is that the stay would essentially be ineffective if we were to

5    start the deadlines over again if we started after the 45 days

6    because -- which would be 45 days that we didn't use.

7         THE COURT:  Mr. Sprinkle, what's your position on

8    that?

9         MR. SPRINKLE:  I don't have a problem with the

10   deadlines except the trial date.  And the reason is the same

11   reason that I opposed all of the motions for stay and to

12   continue, and that is that Mr. Thompson has been without his

13   money for a long time now.  And, I mean, most of the things

14   that have gone on in the case thus far have been asking for

15   more time.

16   Another reason is that the motion deadlines and all of

17   those ended in December, but the trial is not until, I think,

18   April, if I'm not mistaken.  So it's still a long time, you

19   know.  So even if some of those deadlines were pushed 45 days

20   up, it's still a few months before the trial date.  And so it

21   doesn't seem like there's a need to continue the trial.

22        THE COURT:  Okay.  I get that.  Let me kind of lay the

23   groundwork for where we are just so the agents kind of see

24   where I -- just looking at this from a distance.

25   First, this is not a jury case, right?

1          MR. MCCREE:  No, Your Honor.

2          THE COURT:  It's a forfeiture, it's a bench trial.

3          MR. MCCREE:  It can be either, but this particular

4     case will be a bench trial.

5          THE COURT:  Okay.  And I've had these conversations

6     with my clerks.  And I just want to -- coming into this, I want

7     y'all to see kind of what goes around in my mind.  I don't mind

8     giving the government time to see how that investigation goes,

9     Mr. Sprinkle, because here's what I know.  If I deny the

10    forfeiture, and then the investigation turns up something,

11    they'll never get that money.  I mean, it's not like they could

12    ever come back to Mr. Thompson and say, "Hey, give us back the

13    money that we gave back to you."  That's just not the way in

14    the real world it happens.

15         At the same time, simply a dog smelling a case that has

16    some scent of drugs on it where there's not enough to bring an

17    indictment against a person and you could look and say the

18    illegal -- I mean, not illegal -- but the bag, the kind of

19    nefarious ways in which the bag was being transported or the

20    money transported, it looks bad.  But just looking bad is not a

21    reason to take somebody's money.  And so there has to be more

22    to this ultimately than just Mr. Thompson is walking around,

23    flying around, with a bag that looks bad and has some trace

24    scent of drugs.  There has to be more to it than that.

25         And I want to be -- on one hand, I want to give the

1   government every chance it needs to put its case together.

2   But, at the same time, I have a man over here who is sitting

3   here saying, "I didn't do anything.  I'm just walking around

4   with 280-something-thousand dollars."  And that sounds funny

5   and it doesn't sound right, but we can't take your money just

6   because it doesn't look right.  Do you understand what I'm

7   saying?  So at some point I have to weigh it, and then at some

8   point I have to say, "We have to set a final date where we say

9   we're going forward on this, put your case on, and let's see

10  what happens."

11          MR. MCCREE:  Your Honor, I would certainly agree that

12  just having money is not a reason to have it seized from you

13  just because it's cash and it looks funny.

14          As to the dog alert, I would submit that the Eighth

15  Circuit has said that a dog alert is probable cause to

16  investigate what's going on.  And part of our continuing

17  investigation, there's more information than we intend to put

18  on in front of the Court if we have a trial.  One of the things

19  I anticipate we'll put on is that last week we did an ion scan

20  of the bag, and it came back for trace residue of cocaine on

21  the inside of that bag.

22          And another piece of our investigation would be the story

23  that Mr. Thompson is telling that --

24          THE COURT:  He was going to California to --

25          MR. MCCREE:  Right.  And that's also --

Judith A. Ammons, RPR, CRR, CCR
United States Court Reporter

1          THE COURT:  -- buy property?

2          MR. MCCREE:  Right.  The inconsistencies in that story

3    are also evidence that the Court can consider whenever

4    determining whether there's a legitimate reason to forfeit the

5    money.

6          THE COURT:  I understand that.

7          MR. MCCREE:  And part of where our difficulty is

8    coming in right now is that, just like any other civil

9    litigant, we have the right to do discovery.  And to date, Mr.

10   Thompson hasn't fully responded to our discovery requests.  And

11   we've kind of laid out some of the problems that we've had.

12   And I intentionally put in every issue that we have, both minor

13   to major.  One of the minor ones is the very first one we put

14   in about what properties did Mr. Thompson use for a residence

15   and for business.

16        One of the things there he didn't mention was that his

17   business has two addresses, and he only talks about one.  And

18   that's a fairly minor thing.  But we sent him a letter months

19   ago asking for clarity on the pieces that are missing, and we

20   haven't gotten a response to that yet.

21        But a more major issue that we have is an issue with both

22   his discovery responses, but also with his claim.  And that

23   issue is that he is claiming this money both on his own behalf

24   and also on behalf of his business, and he's never said how

25   much is his personally and how much belongs to the business.

1    And then in response to this litigation that's presently

2    the reason for this hearing, he throws out that he may be

3    holding it on behalf of his girlfriend, Alisha Aubrey.  If he

4    is going to be acting on her behalf, he also has to sign that

5    claim on her behalf and identify her as a person who claims

6    ownership, and, again, to clarify how much money is hers.

7        And that's kind of a fundamental issue here because if

8    we're talking about him having $20,000 of this 284,000, versus

9    him having 100,000 of it, our investigation of his story is

10   different.  And it's a fundamental issue that we're just asking

11   that he clarify.  And so our initial relief that we're asking

12   for is to strike his claim because we told him in May that that

13   was a problem, and that issue hasn't been addressed.

14       THE COURT:  When you say strike his claim, strike his

15   claim on behalf of his girlfriend?

16       MR. MCCREE:  Strike his claim in its entirety because

17   it's not specific.  And one of the things that -- the rule that

18   governs here is Rule G of the supplemental rules for -- I think

19   it's asset forfeiture and money laundering -- I'm sorry --

20   asset forfeiture claims, and it's Rule G.  And what it says is

21   that you have to state the nature of your claim to the money.

22   And what we would submit here is that when you claim on behalf

23   of multiple people, we have to treat it as if each individual

24   person is separate.  So if a business came in and was making a

25   claim to the money, it would have to state how much of this

1    money belongs to the business.  And just because Mr. Thompson
2    wants to be the sole person claiming this money on behalf of
3    all three people --

4           THE COURT:  Now, is the business a corporate entity,
5    or is it a partnership, or is it a sole proprietorship?

6           MR. MCCREE:  It's my understanding that it's an LLC.

7           THE COURT:  So it would have to have independent
8    counsel to represent it, and I guess Mr. Sprinkle could
9    represent the LLC as well.

10          MR. MCCREE:  And I think that goes to initially why
11    it's fundamental, because if the business is claiming a portion
12    of the money that Mr. Thompson personally is also claiming,
13    then there's a conflict and Mr. Sprinkle couldn't represent the
14    business and also him individually.  But I suspect that because
15    the business is -- he's also claiming to be representing the
16    business, he's going to say that he's not claiming the same
17    money.  But it just goes to that fundamental issue that stating
18    the amount involved, while it is a simple problem, is one that
19    needs to be resolved.  And so if the litigation goes forward --
20    we tried to resolve it without a motion, first, by sending a
21    letter identifying it as a problem, and then --

22          THE COURT:  Let me say this, and I'll say this to you,
23    Mr. Sprinkle.  My position on discovery is answer everything,
24    answer everything fully, because each side has a right to
25    understand what the arguments are of the other side and to go

1    investigate those.  And so that's just where I stand on

2    discovery.  Now, I know normally with the United States being

3    involved, especially in a case like this, this is a civil case,

4    but it kind of has a criminal feel to it.  And in criminal

5    cases you don't get discovery in the same way you do in civil

6    cases, but the civil rules apply here.

7              MR. MCCREE:  Absolutely.

8              THE COURT:  And so you have to comply with those in

9    responding to discovery, which means, just give it to them, I

10   mean, give them everything, and -- because ultimately you're

11   going to have to file a motion to compel if you don't get what

12   you're looking for, right?

13             MR. MCCREE:  And that's an alternate relief that we're

14   asking for.  So we have a motion to strike that's asking that

15   his claims be struck because he has not complied with the

16   standing rules in stating what his claim is, but also asking

17   that it be struck because he has not complied with the

18   discovery rules.  And the discovery that he has not answered

19   goes to the issue of standing.  And the courts have been a

20   little more aggressive in enforcing those rules because they go

21   to such a fundamental issue and it ties up the case in the

22   early stages.  We've not gotten to the meats and potatoes of

23   discovery because we're still on the issue of standing.

24             And so part of the reason we're asking for -- asking to

25   strike his claims now is because we do recognize that we've had

1    this money for awhile, and if we're not getting resolution on

2    the issue of discovery, then we're going to be in the same

3    position whether it's now or six months from now if he doesn't

4    respond to our requests.  And we've done everything we know to

5    do to get those answers so we can move on.  And we have not

6    moved on because we want to enforce our procedural rights not

7    to be asked those questions until we get a resolution on the

8    issue of standing.

9         THE COURT:  Mr. Sprinkle, how much more time do you

10   need to answer fully the government's discovery requests?

11        MR. SPRINKLE:  On the ones that we can answer, I mean,

12   maybe a couple of weeks.  The issue -- can I respond to --

13        THE COURT:  Of course you can.

14        MR. SPRINKLE:  So I guess I'll take the discovery

15   first, although it's intertwined with the issue of his standing

16   and all of those things.  One, this case is unique.  All the

17   cases that have been cited in the briefs that Mr. McCree filed,

18   this case is different.  In those cases, there were issues with

19   the discovery.  But the issue with the standing intertwined

20   with the discovery was that there were vague statements made

21   about the ownership interest, and then the discovery didn't

22   shore up those statements.  And, therefore, the claimant or the

23   person claiming the property couldn't establish standing

24   because they didn't establish it in their claim, and then they

25   didn't answer the discovery requests with enough information

1     for anything to be established.  This case is wholly different.

2              THE COURT:  Yeah, it's obvious he has standing to file

3     this claim.

4              MR. SPRINKLE:  And not only that, but even with the

5     discovery --

6              THE COURT:  What Mr. McCree -- his response to that

7     would be not that Mr. Thompson has failed to establish his

8     standing, but that the girlfriend probably has failed to

9     establish hers, and that the company, the LLC, probably has

10    failed to establish its.  And what he doesn't want to happen is

11    for us to get into a trial and then the evidence come in in

12    such a way that, although these two parties are not in the

13    courtroom, we find out that the company actually has the rights

14    to 80 percent of the money.  You know, you want to make sure

15    everybody is in the courtroom so everybody is represented so

16    everybody is able to make its claim to the money, and then so

17    whatever I rule will apply to everybody.

18             MR. SPRINKLE:  Yeah.

19             MR. MCCREE:  If I could just say, we don't concede

20    that Mr. Thompson himself has standing.  We will submit that

21    there are deficiencies on all three portions.

22             MR. SPRINKLE:  So it's --

23             THE COURT:  Let me ask you this, Mr. McCree.  If he's

24    the one walking through the airport with the bag with the money

25    in it and you actually took it off him, and he says, "Hey, this

1    is my money.  Man, get your hands off my money," how are you

2    going to say he doesn't have standing to say it's his?

3          MR. MCCREE:  And that'll be a totally different case,

4    Your Honor, because what he's saying is is that, "This is money

5    that I'm holding for someone."  And we say, "Who is that

6    someone?"  On one day, you say, "It's my business."  On another

7    day, you say, "It's my money and my business's money."  And

8    then when I try to strike your claim, you say, "It's my money

9    and my business's money and my girlfriend's money."

10          THE COURT:  I hear you.

11          MR. SPRINKLE:  So the business, the girlfriend, his

12    money are all intermingled and intertwined.  He is in business

13    with his girlfriend, he lives with his girlfriend, and they

14    hold the money together -- is one reason that it's hard to tell

15    over a course of four or so years the exact dollar amount of

16    how much of this money that's at the house that comes from a

17    business that he participates in with the girlfriend, that the

18    girlfriend actually has a job, too, and makes money with the

19    business -- or with her job and that he makes money, and they,

20    living together, keep it all -- it's hard to tell exactly

21    unless there was, you know, some really hard accounting done.

22    And even then you don't know because you don't know how much of

23    whose money was spent over the years.

24        At any rate, I think that that is -- I think that the law

25    shows that that is not the point.  It's somewhat of a

1   distraction, because to claim the money, you don't -- it

2   doesn't say that you have to have an ownership interest in the

3   money.  It says you have to have an interest.  And an interest

4   as a bailee is an interest in the money.  And so if Mr.

5   Thompson is holding the money for himself, for the business,

6   for his girlfriend, if it's all intertwined, if he is the

7   bailee of that money, then he has an interest in it, and that's

8   all that the statute requires.  And certainly he has an

9   interest over an outside party, the government, coming and, you

10  know, exerting some interest over it if they don't have -- if

11  they are not following the law to be able to assert that

12  interest.

13          THE COURT:  Let me ask you this.  How much time after

14  the filing of one of these cases or after a -- these funds are

15  seized does someone have to file a claim to it?

16          MR. MCCREE:  So it depends on what happens.  If there

17  is an administrative forfeiture that's done, the agency has 60

18  days to send out that notice.  And whenever the person receives

19  a notice, I think they have either 30 or 35 days to respond to

20  it.  And then if they do respond, the government has 90 days to

21  file either an indictment, a civil forfeiture action, get an

22  extension, or return the money.

23          And then so once we serve them with a copy of the

24  complaint, he will have 21 days to file his claim.  And so all

25  of those deadlines set together, everyone can act within their

1    appropriate time and it can add some months to the days that --

2    and that's essentially what happened here is that the

3    government moved within its time, and then when we came upon

4    the initial 90-day deadline, we asked for more time because

5    there was the criminal investigation pending.  And I believe it

6    was Judge Holmes who ruled on that motion, and he felt that

7    only a month was needed.  And in respecting that, we proceeded

8    with our filing after the end of that month.

9         And if I could answer one point that Mr. Sprinkle

10   mentioned about the bailee.  I would agree that that is enough

11   to show standing.  But to act on behalf of a bailor, you have

12   to identify who the bailor is and what you're holding on their

13   behalf.  And there Mr. Thompson has not done that.  And if he

14   would do it, it would address his claim.  But, again, that's

15   part of the delay in this case is that we've not got resolution

16   on that issue, and here we are in January and the case was

17   filed in March.  And it's not the government who is not moving

18   forward on its issues.  We tried to do all we can to get those

19   resolutions because it's required in the claim, but we just ask

20   it in discovery so we at least see what the answer is and move

21   on.  Because if we have an understanding those facts are there,

22   we're not going to waste the Court's time in filing motions.

23   But if we can't get an answer, the only way we have to enforce

24   the rule is by coming to the Court, if we can't say informally

25   this is a problem or get the answers through discovery.  And so

1    far that's kind of been where we are.

2          THE COURT:  Mr. Sprinkle, isn't it true that if you

3    have -- and your only client is Mr. Thompson at this point, as

4    far as I can tell.  But if the girlfriend or the LLC really has

5    an interest in their property -- in this property, wouldn't

6    they come forward?

7          MR. SPRINKLE:  Yeah, except that he does -- he's part

8    of the LLC.  These are all -- this is part of his business.

9          THE COURT:  Which takes us to the next point, that if

10   he is an agent of the LLC, and so he is possessing this money

11   both individually and on behalf of the LLC, he should be able

12   to say how much belongs to the LLC and how much belongs to me.

13   I mean, at some point, if he's the one carrying it, he has to

14   be able to say -- I don't think anybody else can be called upon

15   to say how much belongs to whom.  It's his call.  And so at

16   some point -- and I understand the difficulty of doing that and

17   all of that, but at some point, he just has to say, "Hey, look,

18   you know, 25 percent of it is mine, 25 percent is my

19   girlfriend's, 50 percent is the LLC's," or however it is broken

20   down.

21         MR. SPRINKLE:  Well, I don't know that I agree that

22   he -- that he has to say that because of the circumstances.  If

23   it was, you know, Wal-Mart, then, yes, you know, the money that

24   came from Wal-Mart to whatever investor, there is a clear paper

25   trail, they know exactly what it is, they can go back and look

1    at records.  But this is more of a small business.  I mean, the

2    business, to my knowledge, doesn't even file tax returns

3    properly.  I mean, it's not something that's run as a

4    well-oiled machine as a larger corporation may be.  And so, you

5    know, sometimes people, you know, who run small businesses take

6    money out of the cash register and go pay daycare with it.  So,

7    you know, if you ask them to specifically and accurately

8    determine how much money in their pocket right now --

9         THE COURT:  I think there's some filings that said

10   that he was headed to California to buy some property.  And I

11   think before I walk out the door of my law practice -- when I

12   was in practice, and I was a solo practitioner -- I would know

13   how much of that money is mine and how much is the practice or

14   my law partners' or whoever when I'm going out to buy this

15   property.  I mean, it's not like the typical guy working at the

16   gas station or working, say, at a small law firm and your wife

17   comes up and says, "I need money for daycare," and you take

18   some money out and you hand it to her.  This is, "I'm going out

19   to buy a fairly small piece of property -- considering it's in

20   California and Ontario -- but 280-something-thousand dollars,

21   I'm going to go buy property."  I would have to know who I'm

22   buying that property on behalf of and what percentage of the

23   property each one of us is going to own.

24        And so this -- I think we're making this more difficult

25   than what it should be.  I think -- you know, and I'll look

1    back at these with this motion to compel and I'll get some

2    rulings out pretty quickly, but I think ultimately I'm going to

3    end up telling your client he's got to do it, he's got to say

4    what percentage of this money is owned by whom so that the

5    government can at least go out and do its investigation and

6    follow up.

7           MR. SPRINKLE:  And that's another reason that this

8    case is different from lots of other cases.  Cameron said that

9    the Eighth Circuit has held that you have to identify the

10    bailee.  Again, that's a case where the bailee was a lot -- the

11    data in that case was a lot less than in this case.

12        The irony of what the government is claiming is that, on

13    one hand, they asked for a continuance because Mr. Thompson has

14    supposedly not provided enough information.  On the other hand,

15    they say that they have three terabytes of information --

16           MR. MCCREE:  600 gigabytes.

17           MR. SPRINKLE:  -- 600 gigabytes of information from

18    Mr. Thompson's home and from the business, from both locations

19    of the business, actually.  So it's not like they don't know

20    where the business is.  It's not like that information has not

21    been provided like in those other cases.

22        You know, in the other cases, you know, they -- the

23    government was relying on the answers from the claimant to

24    determine, you know, things about the business.  In this case,

25    one of the complaints of the government is:  We know too much

1    information about the business.  We know too much information

2    about them, and we need more time to sort through it.  That is

3    distinctly --

4              THE COURT:  But under the Rules of Civil Procedure, in

5    responding to discovery, the rules give us deadlines in which

6    to respond to interrogatories and document requests, and that's

7    regardless of what other information the person who is seeking

8    the discovery has about you.  In fact, one of the goals of

9    discovery a lot of times is:  I know all of this stuff about

10   this person.  I'm going to ask them for it.  And then when they

11   provide me with false information, I have something by which to

12   attack them, attack their veracity and credibility with.

13   That's all part of discovery.  So I can't say that just because

14   the government knows everything it needs to know right now that

15   you don't have to respond to a proper discovery request.

16             MR. SPRINKLE:  Yes.  And he responded to the requests.

17   Some of the information, he didn't have enough information.

18   Another thing that is unique about this case is that the

19   business records, Mr. Thompson doesn't have them -- the vast

20   majority of them.  The government has them and won't -- I mean,

21   they're holding them from Mr. Thompson.

22             THE COURT:  Okay.

23             MR. SPRINKLE:  I mean, the -- I don't know how much in

24   this case we can get into, but the records from his home and

25   from both businesses were all seized.

1          THE COURT:  Okay.

2          MR. SPRINKLE:  And so he hasn't had access to them for

3    months.  And so --

4          THE COURT:  In your responses to the -- because in

5    your responses to the discovery requests, do you simply say, "I

6    don't have those records.  I can't provide that information"?

7          MR. SPRINKLE:  Yes.  Yes.  In the responses he

8    provides -- and he does provide some information.  He provides

9    several sheets of records that show tens of thousands of

10   dollars of transactions.  And he says in addition to that that,

11   you know, "Further information is part of the information that

12   you all have that I no longer have access to."  And it's not

13   like the business is still running and there are business

14   records being kept.  The businesses were shut down when

15   everything was seized without -- so, I mean, it's not even like

16   they have time to put some records here or some records there.

17   I mean, the records are all out of their possession or have

18   been for months.

19        So it seems like -- I mean, really the way that this case

20   has been proceeding, it seems like a trap to lure Mr. Thompson

21   to a place where he can't comply and, therefore, the government

22   never even has to worry about meeting this burden of showing

23   that any drug conspiracy went on because Mr. Thompson can't

24   even get to the point of showing it.

25        And so to have a motion that claims, at the same time, you

1    know, "I have all of these records that we took from you that

2    you don't have access to anymore that we need time to sort

3    through," and, "Hey, you need to tell us about your business.

4    And, for either one of those reasons, you shouldn't be allowed

5    to argue your case," makes this case -- you know, it's --

6    it's -- it's -- to me, it's untenable, but also it makes this

7    case different from every case where the Eighth Circuit has

8    ruled the way that the government wants you to rule in this

9    case.

10            MR. MCCREE:  Your Honor, to that point, if I could say

11   one thing, is that in our requests for discovery, the special

12   interrogatories don't provide us a mechanism to compel the

13   production of documents.  So what we asked Mr. Thompson to do

14   was identify documents.  And we said in response, "If you have

15   documents to produce, you can produce them and that can meet

16   your duty to identify them."  And so what we would say is if

17   there's documents that he believes are responsive, then all he

18   can do is just say, "Look at this class of document."  He says

19   a few times that -- the people who paid him, and that there are

20   documents in the 600 gigabytes of documents that we have.  Some

21   of those documents have those people's names on them.  No

22   identification of what those documents might be.  "And it's

23   just in there somewhere, go look in that stack of paper, and

24   it's in there somewhere on some page somewhere."  And there's

25   no guidance to us as to what those particular documents might

1   be.

2       And so I would agree that it's hard to -- to speak on

3   behalf of the business without documents, but that's where I

4   think it's important that the parties talk with one another

5   about a resolution that, you know, if needs be, we can make the

6   documents available for him to review to answer discovery.  If

7   that needs to be the workaround, then that's fine, but it just

8   can't be to say, "Go look in that stack of documents."

9           MR. SPRINKLE:  I think that we're arguing this case on

10  theory that are not tied to reality.  The reality is -- I mean,

11  I would have a hard time believing with current technology that

12  in the past three months that the government doesn't have some

13  idea of the financial situation of the business and of Mr.

14  Thompson, which is the nature of these -- of the questions.

15  With the information that he has provided -- where he has

16  provided some financial records, along with the information

17  they have, it's hard to think that there's still a stack of

18  documents sitting somewhere that's not categorized or indexed

19  or that somebody has not gone through by now.

20          THE COURT:  Okay.  Normally when I get a motion to

21  compel, what I have is is the person who sought the information

22  saying, "Here is the interrogatory," and then saying, "Here's

23  the response," and, "Here's why it's deficient."  It's kind of

24  hard for me to go through and -- then I have to determine

25  whether the person who is responding gave a response that

1    complies with the rule.  I don't quite have that.

2         MR. MCCREE:  Your Honor, the discovery responses are

3    in Exhibit 13 -- as document number 8 in docket 13, 13-8 has

4    the full discovery responses.

5         THE COURT:  13-8.  So I need to sit down and look at

6    that because I have not seen that.  What I have here are the

7    motions and I have -- what I have here -- hold on just one

8    second.  I have the United States of America's motion to

9    continue and for the issuance of a scheduling order.  I have

10   the motion to strike Mr. Thompson's claim.  I don't have -- I

11   see where you cited the exhibits, but I don't have them.  So I

12   need to look at those exhibits because then what I will do is,

13   in the next couple of days, I'll get out my order on this.

14        So here's what I see.  And here's, from listening to both

15   of you, I see the government saying that, "I need information."

16   I see the defendant saying -- the claimant saying,

17   "Legitimately, I don't have a way to answer that question any

18   better than I have answered.  And so there's no way for us to

19   sit down here and talk this through."  I've got to read that

20   and then just rule.  And I will either order the defendant -- I

21   keep saying defendant because I keep thinking of you as a

22   prosecutor, Mr. McCree -- either the claimant is going to be

23   ordered to answer, or I'm going to tell the government that he

24   has provided you the information that he can provide you given

25   what he has.  And so there's really no reason for us to

1   continue talking about this.  I've just got to look at those

2   exhibits and then rule.

3        Now, is there anything you want to let me know before I

4   start looking at these exhibits?  It's like this.  Once I start

5   ruling, I'm just going to rule and that's going to be it.  And

6   any arguments you may have, any suggestions you may have for me

7   after that, I'm not going to say it's waived, but it's over

8   because I'm going to rule.

9        MR. MCCREE:  Yes, Your Honor.  And I need to clarify

10  something that's in the record from the United States in our

11  motion to continue.  We mentioned in there one of the reasons

12  we're asking for a continuance is the 600 gigabytes of

13  information.  And I would submit that we have been diligent in

14  trying to do our criminal investigation.  But it's my

15  understanding that we've been working through that 600

16  gigabytes, but now understand that the issue is getting those

17  from the state.  The state is assisting us in downloading those

18  documents and we don't have those in our custody yet.

19       I would acknowledge though that anytime that's between now

20  and -- I mean, between the time we filed the motion and now is

21  the only time can be charged against the government for time

22  that we could have been reviewing these documents before we

23  filed the motion.  But I would still say our point is still the

24  same in that we've been doing a diligent investigation on a

25  host of things, including the documents that we got in the

1     search warrant affidavit.  So I just want to acknowledge that.

2              THE COURT:  Your point is, disregard the statement

3     about having to review the 600 gigabytes?

4              MR. MCCREE:  No, Your Honor.  I would say that that's

5     part of it, but I feel the need to clarify that statement --

6              THE COURT:  That's fine.

7              MR. MCCREE:  -- based on my understanding.

8              THE COURT:  I mean, I'm not going to cut either side

9     off at the knees just to try to get it to trial quickly.  But I

10    do -- you know, I was telling Mr. Jones over there, my clerk,

11    that I've known of a couple of different occasions where people

12    I knew -- one was a lawyer in Helena, one was a farmer in

13    Helena.  Somebody broke into their law office or to the farm

14    office and stole large sums of money.  And so then the question

15    was:  Why did he have 100-and-something-thousand dollars in his

16    desk?  Why did he have -- and if you were to ask those

17    people -- one is dead now -- if you asked him, he'd say, "Hey,

18    look, every month I would siphon off a few dollars and put them

19    away, and I just kept a large sum of money."

20         I'm not saying that I am there with you, Mr. Thompson,

21    that you just walk around with 280-something-thousand dollars

22    in your bag.  But there are explanations for why people carry

23    large sums of money.  And so it is what it is.  At some point,

24    we've got to get this case to trial and let the government

25    either prove it up so you can keep his money, or we can give it

1    back to him.

2         And the question is this, Mr. McCree.  If I rule in favor

3    of Mr. Thompson, do you give it back to him in cash, or do you

4    write him a check?

5              MR. MCCREE:  I think --

6              THE COURT:  Does he walk out with his bag, with a

7    garbage sack full of money?  How does that happen?

8              MR. MCCREE:  I think it's a cashier's check, either a

9    cashier's check or a wire transfer.

10             THE COURT:  What if he says, "Well, that's not the

11   money you took from me.  I want the actual money that you

12   took"?

13             MR. MCCREE:  It would be uncharted territory.

14             THE COURT:  He has a civil rights violation.  "You

15   actually took my property and it was actual dollars, and I want

16   those actual dollars back," what do you say?

17             MR. MCCREE:  I guess we have to cross that bridge if

18   we came there.

19             THE COURT:  That's right.  I'm going to give the

20   government a chance to prove up its case.  At the same time, I

21   say this to you, Mr. McCree, I know you're saying, "Look, if he

22   would just answer my questions, we could get it to trial and

23   get it over with."  I'm sure your agents over here would rather

24   wrap this thing up and be done with it.  But we need to start

25   working towards that.

1        And I tell you this, Mr. Thompson, and I tell you this,

2   Mr. Sprinkle, and even you, Mr. McCree, whatever happens

3   happens.  We can't be scared of the inevitable of getting it to

4   trial.  As the finder of fact in this case, I want to hear the

5   entire case.  I want to hear -- I want the government to have a

6   chance to prove its case.  Also, I want to have --

7   Mr. Sprinkle, give you a chance and Mr. Thompson a chance to

8   come in and tell me that, "That's my money and they had no good

9   reason to take it."  And you're going to get a fair trial, both

10  sides.  But you've got to give him all the information he needs

11  to be able to put on his case.  And then if he asks you for

12  stuff, Mr. McCree, you've got to give him what he needs to be

13  able to defend it, I don't even know if that's right, or to

14  make his claim or to prove his claim up.

15        MR. SPRINKLE:  Well, that actually is one reason why I

16  think that some of this might be unconstitutional, the statute

17  itself, but that's another issue --

18        THE COURT:  And I'll give you a chance to make your

19  record on all of that so you can preserve that, so, depending

20  on what happens, you will have that argument.

21        MR. SPRINKLE:  One thing that I will want, you know,

22  if I get to put some last words in --

23        THE COURT:  Of course.

24        MR. SPRINKLE:  -- you know, is that, you know, this --

25  I know that this seems to center on whether or not Mr. Thompson

1    can answer different accounting questions about the business.

2    I personally think that that is somewhat of a decoy.  At any

3    rate, the allegation is that he's part of a drug enterprise.

4    And the statute permits the government to go from having

5    probable cause to have 90 days to make a prima facie showing of

6    that.  And that never happened, from my read of the case.  And

7    now we're, you know, a year -- almost a year from that 90 days

8    that the statute provides to do that, and still the

9    government's statement is, "Well, if he tells us about the

10   accounting of his business, then we can show that there was a

11   drug enterprise."  I don't really see how that would happen.

12        And there's not been -- it's just hard to believe that if

13   there were leads on the drug enterprise, that, you know, a year

14   and some months after it was taken and that investigation

15   commenced, that still the only evidence that there's a drug

16   enterprise is that a dog smelled some type of narcotic on a

17   bag, and nothing else over the past year or so, and that this

18   whole case rests on whether or not Mr. Thompson can be a good,

19   studious accountant for his business and point to which number

20   means what in the business.

21        I mean, I know that, without considering the reality of

22   the case, it sounds like, "Okay, well.  Yeah, I point to these

23   numbers and I'll be good."  But I want you to consider the

24   totality of the case and that there's nothing about the case

25   thus far that suggests that the government will get a lot

1    farther than it is now by Mr. Thompson being able to, you know,

2    account better in the business.  And so, you know, if they have

3    more time to make the case, I just -- I would like to make

4    the -- take the position that that is all going against the due

5    process rights.  You know, all the time more that would be

6    spent and even the time we spent in the past, you know, is all

7    going against his rights to not have the government do certain

8    things without having legally sufficient reasons.  And our

9    position is that, thus far, after taking the money at the

10   airport, there's not been a legally sufficient reason stated

11   for anything else.

12        THE COURT:  I understand.  You're making your closing

13   argument in some ways.  And here's the thing.  The only way I

14   can ever get there is if I've heard the government's case and

15   they've had a chance to put on all of their facts and then I

16   rule that way.  And we can't get there unless I hear what the

17   government has to say.  And if Mr. McCree comes in here and

18   there's nothing to this, but, you know, "Mr. Thompson's

19   business is in shambles.  Mr. Thompson's girlfriend says he's

20   no good.  You know, he claims he's going to California to buy

21   property, but we haven't found property there" -- if that's all

22   it is, I'll see that.

23        But, now, if he comes in here and he shows that, "Hey,

24   look, here's systematically what was going on.  And although we

25   didn't have enough to have probable cause to bring a criminal

1  case, here's how this all fits," that's a different story.  But

2  he has to have a right to get all of his evidence together to

3  at least present it.  And I'm going to look at it.  And if all

4  it is is a bunch of smoke and he's puffing trying to make me

5  find something where there is nothing, I'll see that, too, and

6  I'll rule for Mr. Thompson.  I'll have no problem at all giving

7  that man his money back.

8        But if Mr. McCree comes in here and shows me, "Okay.

9  There's a reason why he had this bag and he was coming through

10  the airport and he was doing all of this.  And let me show you

11  how this all works out," and he puts it together for me, and it

12  appears that there is a drug enterprise, but they just couldn't

13  quite find the way to indict Mr. Thompson, the government is

14  going to have more money to burn.  It just is what it is.  But

15  he has to have a right or has to have the ability to put his

16  case together, just like you have to have the right to put your

17  case together.

18        And I think what you're arguing for -- and I get what

19  you're saying.  Your position, Mr. Sprinkle, and, Mr.

20  Thompson -- I don't know if you followed him -- and, agents,

21  what Mr. Sprinkle's position is is that, "Look, I've got a man

22  here who is walking through the airport with money.  They don't

23  really know what he has done.  They are trying to figure out a

24  way.  And what they are doing is they've turned it around on

25  him and now they are trying to make him prove or disprove that

1    it was a drug conspiracy, and that he shouldn't have the burden

2    of disproving he is involved in a drug conspiracy.  The

3    government should have the burden of showing he's involved in

4    one.  And the more they keep badgering my man for more

5    information is just for him to essentially try to give them a

6    case that they don't now have."  I get that.  But he still has

7    a right to information in a civil case.

8        If this were a criminal case, it would be different.  A

9    criminal case is totally different where they are trying to

10   deprive you of your right to liberty and they're going to put

11   you in prison and all of that.  In a civil case they have a

12   right to ask you, "What's going on here?  Tell us."

13       And I'll tell you, here's how this plays out.  And I've

14   seen it happen in state court a few times.  And this is the

15   first time I've had one of these where we've really had a big

16   dust-up over it, or the concern for the claimant is, "Do I just

17   walk away and let them have my money so that they don't try to

18   get more information out of me so they can indict me?  Or do I

19   stand in there and fight, all the while trying to get my money

20   back, all the while opening myself up for them to find

21   something on me to indict me on"?  And I understand that.  I

22   understand that that's the dance you're doing right now.

23           MR. SPRINKLE:  And, you know, that actually -- part of

24   that is part of it because, you know -- I mean, the

25   information --

1          THE COURT:  You don't have to say anything about that.

2          MR. SPRINKLE:  The information is what it is.  But

3    going through proceedings is stressful itself.  You know, I

4    mean, like having your businesses and house raided is its own

5    thing.  And so -- and that really is why the time actually does

6    hurt him and why I pushed to move it along faster because, you

7    know, the longer someone deals with that, the more discouraged

8    they get -- whether they are right or wrong, you know, the more

9    discouraged they would get with these major life things that

10   affect their life going on.  And so my thing is, you know, yes,

11   the government has a right to prove a case.  I think that if

12   after a year and a half the government has not even stated a

13   case yet, then I think that putting, you know, Mr. Thompson

14   through these life changes, you know, is a deprivation of his

15   liberty.

16          MR. MCCREE:  And, Your Honor, I would totally disagree

17   with that.  The rules provide plenty of opportunity for Mr.

18   Thompson to raise his concerns.  We spoke to him about the

19   stay, "If you're concerned about statements you're making

20   incriminating you in a criminal matter, let's resolve the

21   criminal matter first and then we can litigate this case.

22   There's no issue about your criminal rights."  He chose not to

23   do that.  We don't take any issue with that.  But he can't then

24   say that, "My rights are being violated by asking legitimate

25   questions in discovery."  To the extent he is saying that due

1     process has been violated, due process requires procedures.

2     Procedures were in place.  The 90 days were extended by a judge

3     for good cause.  It's not the United States making that choice.

4     It's a judge who looked at our proof and said, "You can have a

5     few more days."  And so we're not trying to run him over.

6          One of the motions that's pending before the Court is a

7     motion for leave to reply, and it has in there a few cases that

8     addressed the constitutional arguments.  First, we would say

9     that there's not been a thorough analysis of it, but to the

10    extent the Court wants to get into the merits, there are cases

11    that say -- you know, the takings clause.  A forfeiture is not

12    taking.  It's exercise of police power.  So, you know, if the

13    Court is looking to strike his claims because he hasn't

14    answered, that's not a violation of due process.  That's just a

15    court using its inherent power to ensure that both parties have

16    a right to get the discovery that they are entitled to.

17         So with that, you know, most of our issues are in the

18    briefs.  I'll give Mr. Sprinkle a chance to look at this, but I

19    printed out all of the documents that are -- I printed out the

20    government's motions and any pending motions, and I'm happy to

21    leave this for the Court if it's helpful.  If Mr. Sprinkle

22    wants to see it just to make sure there's not anything

23    extraneous, I'm happy to leave it for the Court.

24              THE COURT:  Hand that to Mr. Jones.  All right.

25              MR. SPRINKLE:  I hate to go back and forth too much --

1          THE COURT:  Last word.

2          MR. SPRINKLE:  -- but I think that the argument -- my

3    point was slightly mischaracterized there.  You know, it's not

4    that Mr. Thompson -- Mr. Thompson is not making an argument

5    that, hey, his rights are being violated because he's being --

6    because they might ask some criminally implicating questions.

7    That is part of the process.

8          THE COURT:  I think Mr. McCree was responding to my

9    statement.  I think my statement was Mr. Thompson probably has

10   the personal belief, and I would say you might, too,

11   Mr. Sprinkle, although you're not making this argument, that he

12   is in a position where he's got to make a decision whether he

13   walks away from this money and just lets the government have

14   it, or whether he stays in here and fights for it, which, while

15   he's fighting, could open up himself to providing information

16   that could get him indicted.

17        And Mr. McCree's response to that was, "No, Judge.  We've

18   offered him a chance to stay this case while we deal with the

19   criminal case and see what happens there, but he didn't want to

20   stay this case because he wants to try to get his money back."

21   And I understand Mr. McCree's point.  But the point does not

22   answer the question:  If he needs the money.  If he needs the

23   money, then he might not be able to wait until the end to see

24   what happens with the criminal case or decide whether he goes

25   after this.  But that's not for us to decide right here.  And

1    it's not a constitutional issue.  It's not whether his rights

2    have been deprived.  The government is following the procedures

3    laid out by law.

4              MR. MCCREE:  Yes, Your Honor.

5              THE COURT:  And the appellate courts have ruled that

6    this procedure is appropriate.  So, I mean, constitutionality

7    we're not fighting over.  We're just trying to figure out how

8    we can get this case quickly to trial so we can deal with it.

9              MR. SPRINKLE:  And I am pushing for that.  I am taking

10   issue with the constitutionality of it, though, because, you

11   know, certainly the procedure is here.  I think that the way

12   it's been used in this case is -- procedurally doesn't comport

13   with due process.  And so I think that even the procedures in

14   this case, on the facts they are being applied to, is a

15   violation of his due process rights.  But that is another

16   issue --

17             THE COURT:  I understand.

18             MR. SPRINKLE:  -- you know, aside from the main one

19   we've been talking about.

20             THE COURT:  Any last words before we go off the

21   record?  What I'm going to do is, I've got another trial

22   starting up on Monday that I'm going to start preparing for,

23   and it's a case we started some time ago and then we had to

24   declare a mistrial because a man thought he was having a heart

25   attack in the courtroom.  That's going to take another week and

1    something.  Then I have another criminal case, conspiracy,

2    coming up right behind that.  I've got Mann that we've worked

3    up a draft of it and we've had it for awhile and I've literally

4    just been sitting on it, not moving it, and I want to go on and

5    get that wrapped up and get it out.

6         So I'm sitting here telling you all of this to tell you

7    hopefully I can look at this and get a ruling fairly quickly.

8    But if I start turning my attention to these other issues, it

9    might take me a little longer than what I -- and for the agents

10   to understand this, normally I like to tell the lawyers when

11   they leave my office or leave the courtroom that I'll have

12   these out in a week or have it out.  But I can't look at you

13   gentlemen in the face now, and you, too, lady, and tell you

14   that I'm going to have it out in a week or in a few days

15   because I just might not.  So I'll try to get to it and get

16   moving as quickly as I can.  This is going to hold you up,

17   Mr. Sprinkle, it doesn't help with your push to get it done

18   quickly, but it is what it is.  And I've got a lot of stuff

19   stacked up I need to get to, but I'll try to do it fairly

20   quickly.

21        MR. MCCREE:  Yes, Your Honor.  The only thing I would

22   mention is that because the discovery deadline has expired, we

23   haven't been able to do any discovery in the time this has been

24   pending, so we don't want the Court to think that we're just

25   sitting on our hands.

1          THE COURT:  I understand that.

2          See, Ms. Williams, you'll learn this, that what Mr. McCree

3     just did, he just told me in a very nice way that, "Judge,

4     you're my problem."  Now, that's what he just did.  I mean, he

5     put it on the record, too, so that if ever I come back and try

6     to rush him on anything, he can tell the Eighth Circuit that,

7     "I sat there and told that judge to his face that he wasn't

8     ruling, he's being slow, so that's why I can't do my job."

9          See, Mr. Sprinkle, you notice I've had Mr. McCree in my

10    courtroom enough to know that he does that all the time.

11         MR. SPRINKLE:  I'm taking notes.

12         THE COURT:  That's okay.  I'll take it because he is

13    actually telling the truth this time.

14         All right.  Let's adjourn.

15         (Proceedings adjourning at 2:52 p.m.)

16                    C E R T I F I C A T E

17    I, Judith A. Ammons, Official Court Reporter, do hereby

18    certify that the foregoing is a true and correct transcript of

19    proceedings in the above-entitled case.

20

21    /s/ Judith A. Ammons, RPR, CRR, CCR   Date: February 12, 2017
         United States Court Reporter
22

23

24

25


                    Judith A. Ammons, RPR, CRR, CCR
                       United States Court Reporter